UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

JAYLEN APPLING AND  J.M., a minor by their Parent and
Guardian, ELY TORRES,

                    **COMPLAINT**

Plaintiffs,

   -against-                                   **Case No.  25-cv-02908**

THE CITY OF NEW YORK; NYPD OFFICER CHRISTOPHER
HENDRICKSON (#9384); NYPD OFFICER KASEEM PENNANT
(29437); NYPD OFFICER DERRECK CRUZ (#18234); NYPD
OFFICER JOSEPH WHELAN (#24140); NYPD OFFICER PHONG
LE (#13478); NYPD MEMBERS JOHN DOES 1-12 AND NYPD
SUPERIVSORS RICHARD ROSES 13-20;

Defendants.
-----------------------------------------------------------------------------------X

      Plaintiffs JAYLEN APPLING and J.M., a minor by their Parent and Guardian, ELY

TORRES, ANDREW HALLINAN AND, by their attorneys, WYLIE STECKLOW P.L.L.C.,

hereby complain of Defendants as follows:

## JURISDICTION AND VENUE

    1.     Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, the First, Fourth, and

Fourteenth Amendments to the United States Constitution, and New York State and City law.

    2.     This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331,

1343, and 1367, and 42 U.S.C. § 1983.

    3.     Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of

New York, where the Plaintiffs reside,  Defendant CITY OF NEW YORK has offices, and the

majority of the actions complained of herein occurred.

4.     Plaintiff Appling timely served Notices of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

5.     At least thirty days have elapsed since service of Plaintiff Appling's Notice of Claim and adjustment and payment thereof has been neglected or refused.

6.     This action has been initiated within one year and ninety days of the accrual of Plaintiff Appling's claims pursuant to New York State Law.

## PARTIES

7.     At all times mentioned herein, Plaintiff JAYLEN APPLING (Mr. Appling) was a resident of Bronx County in the City and State of New York.

8.     At all times mentioned herein, Plaintiff,  J.M., a minor by their Parent and Guardian, ELY TORRES,  was a resident of Bronx County in the City and State of New York.

9.     At all relevant times mentioned herein, Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

10.     At all relevant times mentioned herein, NYPD Officer CHRISTOPHER HENDRICKSON was assigned Shield No. 9384, Tax Id. No. 970592, and Command 48. Defendant HENDRICKSON participated in detaining, assaulting and harassing both Plaintiffs as detailed below.

11.     At all relevant times mentioned herein, NYPD Officer KASEEM PENNANT was assigned Shield No. 29437, Tax Id. No. 965405, and Command 48  Defendant PENNANT participated in detaining, assaulting and harassing Plaintiff Appling as detailed below.

12.     Defendants NYPD Officer HENDRICKSON and PENNANT are collectively referred to herein as the "Appling Defendants."

13.     At all relevant times mentioned herein, NYPD Officer DERRECK CRUZ was assigned Shield No. 18234, Tax Id. No. 969613, and Command 48. Defendant CRUZ participated in detaining, assaulting and harassing Plaintiff J.M. as detailed below.

14.     At all relevant times mentioned herein, NYPD Officer JOSEPH WHELAN was assigned Shield No. 24140, Tax Id. No.969426, and Command 48  Defendant WHELAN participated in detaining, assaulting and harassing Plaintiff J.M. as detailed below.

15.     At all relevant times mentioned herein, NYPD Officer PHONG LE was assigned Shield No. 13478, Tax Id. No.969890, and Command 48  Defendant LE participated in detaining, assaulting and harassing Plaintiff J.M. as detailed below.

16.     Defendants NYPD Officer HENDRICKSON, CRUZ, WHELAN and LE are collectively referred to herein as the "J.M. Defendants."

17.     Plaintiffs do not currently know the names of Doe Defendants 1-12 or Roe Defendants 12-20, but upon information and belief, their names are known to the defendants.

18.     Each individual Defendant is sued in his or her individual and official capacities.

19.     The Defendants are NYPD members who unlawfully used excessive force, arrested, and/or detained Plaintiffs and others similarly situated in violation of their constitutional rights.

20.     At all times hereinafter mentioned, the Defendants were employed by the Defendant CITY OF NEW YORK as members of the NYPD.  Some of their true names, as noted throughout this Complaint, are currently unknown to the Plaintiffs.

21.    At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

22.    Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant CITY OF NEW YORK.

23.    Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant CITY OF NEW YORK who were acting for, and on behalf of, and with the power and authority vested in them by Defendant CITY OF NEW YORK and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

24.    Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

25.    At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

26.    Although there was a reasonable opportunity to do so, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

**JURY DEMAND**

27.    Plaintiffs demand a trial by jury in this action on each and every one of their claims for which a jury trial is legally available.

## STATEMENT OF FACTS

### PLAINTIFF APPLING'S EXPERIENCE ON DECEMBER 13, 2023

28.    On December 13, 2023, Mr. Appling was walking in the East Tremont neighborhood of the Bronx, close to where he lived.

29.    Mr. Appling had met up with a friend who had finished school for the day, and they were walking together on the sidewalk on East 180th Street between Clinton and Prospect Avenue.

30.    At approximately, 3:45pm, an unmarked black NYPD vehicle pulled over where Mr. Appling and his friend were walking.  The unmarked NYPD vehicle drove perpendicular to the roadway, blocking the bicycle lane, one lane of vehicular traffic with the front bumper of the vehicle on the sidewalk.



31.    There was no emergency or other rationale for the officers to have pulled their unmarked police vehicle in the manner they chose to do, other than to intimidate and put fear into Mr. Appling and his friend.  Their vehicle was now blocking a car in the roadway, the bicycle lane and partially on the edge of the sidewalk.

32.    Jaylen, having already suffered numerous and distinct moments of harassment by members of the NYPD and the 48 precinct, was immediately put in fear for his life and began recording the interaction.

33.    Four officers exited the vehicle and approached Mr. Appling.



34.    While they approached Mr. Appling, Mr. Appling kept repeating to these officers, "Do Not Touch Me, Do Not Touch Me. I don't consent to a search, Do Not Touch Me."

35.    Defendant PENNANT was the lead officer approaching Mr. Appling.



36.    As he approached Mr. Appling, Defendant PENNANT continued to seek to intimidate and put fear into Mr. Appling by making furtive and threatening moves.



37. Defendant HENDRICKSON also followed Defendant PENNANT and assisted in detaining, assaulting, handcuffing and scaring Mr. Appling.

38. The officers were joined by a JOHN DOE Defendant in holding Mr. Appling against his will, handcuffing him and conducting an unlawful search of Mr. Appling.

39. Mr. Appling was initially tackled and had metal handcuffs placed on his wrists.

40. The Appling defendants then brought Mr. Appling to his feet and asked him if he had anything illegal on him.

41. Mr. Appling informed the officers he would not answer any of their questions.

42. One of the Appling defendants began to pat Mr. Appling down, while a different Appling defendant pulled Mr. Appling's sweatshirt above his chest exposing his body.

43. After the unlawful search resulted in finding nothing, the officers removed the handcuffs from Mr. Appling.

44. Mr. Appling requested their names and badge numbers, but they refused and got back into their vehicle and exited the location.

45. During the entirety of this detention, Mr. Appling's friend was nearby being held by the fourth officer but not searched, handcuffed or questioned.


**+PLAINTIFF APPLING'S EXPERIENCE ON OCTOBER 31, 2023**

46. Young Jaylen Appling was walking home in the East Tremont area of the Bronx.

47.     Jaylen had spent time that afternoon into the evening playing basketball and also engaging in the favorite American event of October 31, trick or treating with a friend.

48.     Jaylen and his friend were walking on 182nd / 183rd Street and Garden Street.

49.     An unmarked black NYPD vehicle driving down Crotona just past Garden, executed a U-turn and pulled up near Jaylen and his friend.

50.     Jaylen begins to back up and tell the officers that exited the vehicle that he did not consent to a search.

51.     A few officers surrounded Jaylen's friend, and another officer exists the vehicle while grabbing at his waistband.

52.     Jaylen in fear for his life begins to run.  He runs across the park and down Beaumont.

53.     At Beaumont and 133rd Street, Jaylen is thrown into a gate by a John Doe Defendant Officer.

54.     A John Doe Defendant Officer places Jaylen in handcuffs.

55.     Jaylen tells his friend to go get his mother while a John Doe Defendant Officer searches him and takes his work knife from him.

56.     Jaylen hears one John Doe Defendant Officer say to another John Doe Defendant Officer, "F*ck it, let's book him for a knife."

57.     Jaylen is removed to the 48th Precinct and when he is in the precinct, he is allowed to call his father.  His father confirms the knife is a work knife and gift to Jaylen from his father.

58.     Eventually, Jaylen is released from the precinct with a summons (#4448348850).



59.     The NYPD do not file a legally acceptable accusatory instrument related to this summons and Jaylen is told he does not need to come to court.

60.     The certificate of disposition indicates that Jaylen is listed as undomiciled, which is untrue and more support that the NYPD knew the summons and arrest were bad and were not seeking to have Mr. Appling get any notice of the summons defect without returning to court.

**PLAINTIFF APPLING'S EXPERIENCE ON NOVEMBER 2023**

61.     In the month of November 2024, Jaylen is stopped and harassed by members of the 48th precinct approximately 15 different times.  Each time, Mr. Appling is scared and fearful for his life, and yet, the NYPD do not arrest him.  They simply stop him, question him and eventually they let him leave.

**PLAINTIFF APPLING'S EXPERIENCE ON NOVEMBER 16, 2024**

62.     In the evening of November 16, 2024, Mr. Appling was again walking in the area of East Tremont, Bronx.

63.     Members of the NYPD were following Mr. Appling and eventually John Doe defendants stopped Mr. Appling.

64.     John Doe Defendant Officers grabbed Mr. Appling and stated they had seen a knife in his pocket, to which Mr. Appling replied he had a work knife in his pocket, and it was a legal one.

65.     A John Doe Defendant Officer would not let Mr. Appling exit the location and put their hands in the middle of Mr. Appling's chest holding him in place.

66.     Mr. Appling explained that he was in panic due to the prior interactions with the NYPD, but the John Doe Defendant Officers did not take this into account.

67.     Numerous other officers reported to the location.

68.     Mr. Appling was asked if he possessed identification, and he said yes and asked if the officers wanted to see his identification.  The officers confirmed they wanted to see his ID.

69.     As Mr. Appling sought to take his ID out of his pocket, he was grabbed and thrown against a gate with his head being pushed against a metal pole by a John Doe Defendant Officer.

70.     Mr. Appling sought to contact his mother, but a John Doe Defendant Officer grabbed Mr. Appling's phone and threw it to the ground, cracking the screen.

71.     The John Doe Defendant Officers did not seek to review or even read Mr. Appling's ID, but a John Doe Defendant Officer grabbed the knife from Mr. Appling's pocket and confirmed it was a legal knife.

72.     At this point, Mr. Appling was released from being pressed against the gate and metal pole.

73.     Mr. Appling could now observe 2 regular RMP vehicles and one dark grey unmarked Ford vehicle.

74.    One John Doe Defendant Officer still held onto Mr. Appling's sweater and this John Doe Defendant Officer yanked on Mr. Appling's sweater and used a racial slur in degrading Mr. Appling ("called me an N with the hard er at the end").

75.    This John Doe Defendant Officer then pushed Mr. Appling into the gate again and threatened Mr. Appling with serious physical injury.

76.    In response, the John Doe Defendant Officer tossed Mr. Appling's legal knife over the gate and into the grass area and again used the degrading offensive word in referring to Mr. Appling.

77.    Mr. Appling requested the names and badge numbers of the officers present, but he was not provided with any information.

78.    Mr. Appling was eventually taken by his mother to the emergency room.

### PLAINTIFF J.M.'S EXPERIENCE ON May 30, 2024

79.    On May 30, 2024, around 3:30pm, J.M. was walking on Boston Road near his home between 178th and 179th Streets.

80.    For no lawful reason, the J.M. Defendants stopped J.M.

81.    For no lawful reason and without proper cause, the J.M. Defendants detained J.M.





82.    For no lawful reason and without proper cause, the J.M. Defendants pinned J.M.'s arms behind his back.

83.    For no lawful reason and without proper cause, the J.M. Defendants surrounded J.M.

84.    Seemingly, once the officers understood that a friend of J.M., who was repeating, "he's a minor, he's a minor," was also video recording the incident on his phone, the J.M. Defendants let J.M. go but continued to follow him to intimidate him for no lawful purpose.



**PLAINTIFF J.M.'S EXPERIENCE ON June 1, 2024**

85.    On June 1, 2024, around 12:40am, J.M. was walking on Boston Road near his home between 178th and 179th Streets.

86.    An unmarked black police vehicle drove past J.M. and did a U-Turn to come speak with J.M.

87.    The vehicle approached J.M. seeking to intimidate and scare him.

88.    This incident was observed by the mother of J.M.

89.    The vehicle stopped J.M. and rolled down their window telling J.M. to stop.

90.    The officers in the vehicle were the J.M. Defendant Officers. The same J.M. Defendant Officers that had stopped, detained and harassed J.M. one day earlier.

91.    After stopping J.M., they sought to intimidate him by saying things like, where are you going and what are you doing.

**PLAINTIFF J.M.'S EXPERIENCE ON July 4, 2024**

92.    On July 4, 2024, around 10:40pm, J.M. was walking on East Tremont near Boston Road in the West Farms Square area of the Bronx near his home.

93.    Three members of the NYPD, believed to be the J.M. Defendants, were in a police vehicle and stopped near where J.M. was walking.

94.    One of the J.M. Defendant Officers rolled down the passenger side rear window of the vehicle and called out to J.M., but J.M. ignored them and kept walking.

95.    At some point, J.M. realized these officers were exiting their vehicle and due to the intimidation, harassment, searches and detention these officers had put J.M. through in the prior months, J.M. sought to leave the area.

96.    J.M. began to jog away from the area on East Tremont crossing Bryant Avenue.

97.    As J.M. approached Boston Road, he began to climb a fence on East Tremont that housed a parking lot.

98.    At this moment, the J.M. Defendant Officers and John Doe Defendants grabbed J.M. and violently pulled him down from the fence and began to choke J.M.

99.    The J.M. Defendant Officers and John Doe Defendants placed metal handcuffs on J.M. very tightly.

100.    Due to the manner in which these J.M. Defendant Officers and John Doe Defendants had pulled J.M. down from the fence, J.M. now had a big gash in his hand that was bleeding.

101.    J.M. was placed into a police vehicle and transported to the 48th Precinct.

102.    While in the vehicle, J.M. requested assistance for his bleeding hand, but his request for assistance was ignored.

103.    Once at the 48th Precinct, J.M. was held for numerous hours.

104.    Once at the 48th Precinct, J.M. was handcuffed to a chair and questions by members of the NYPD about shootings that occurred in and around East Tremont area of the Bronx.

105.    While at the 48th Precinct, Defendant Hendrickson kept asking about a non-existent gun.

106.    Eventually, J.M. was released to his mother in the early hours of the morning.

107.    The NYPD released J.M. without any charges, without any summons and without any Desk Appearance Ticket.

## OTHER DOCUMENTS AND FACTS PLAINTIFF INCORPORATES BY REFERENCE

108.    Plaintiff incorporates by reference the facts contained in the reports that have been issued concerning the increase in stop and frisks of Black and Latino individuals,  including, *inter alia,*

    *A.*    The report issued by the New York Civil Liberties Union that identified the largest volume of stops was at two Bronx Precincts, including the 48th precinct (March 22, 2024);[1]

    *B.*    The Twentieth Report of the NYPD Independent Monitor focused on Racial Disparities in NYPD Stop, Question and Frisk Practices (April 11, 2024)[2];

    *C.*    The February 26, 2025, Floyd Year End Letter[3] that identifies the following continuing problems with NYPD stop and frisk: and

---

[1] https://www.nyclu.org/commentary/nypd-stops-are-skyrocketing-under-mayor-adams

[2] https://www.nypdmonitor.org/wp-content/uploads/2024/04/2024.04.11-927-1-Twentieth-Report.pdf

[3] https://www.nypdmonitor.org/wp-content/uploads/2025/02/2025.02.26-Floyd-2024-Year-End-Letter.pdf

i.  NYPD supervisors in the field and in commands are continuing to fail to identify unconstitutional stops, frisks, and searches.

ii.  NYPD's compliance rates for self-initiated stops are extremely low (86.9% stops, 57.5% frisks, 61.2% searches), as opposed to when officers are responding to a radio run (90.2% stops, 84.6% frisks, 72.5% searches).

iii.  Underreporting of stops continues (59%) to be a fundamental problem, making a true accounting of compliance impossible.

D.  The various reports[4] of the NYPD Independent Monitor including the 23rd Report[5] dated February 3, 2025, that continues to find lack of compliance with stop and frisk, especially with officer self-initiated stops:

> We are not here to tell the Department how it should police, but we are here to tell the Department to conduct stops, frisks, and searches constitutionally. We are especially concerned about officer self-initiated stops because they have the greatest non-compliance rates. And we have not seen improvement from the non-compliance rates found in our 2022 audit in our 2023 audit.

E.

109.  Plaintiff incorporates by reference the factual allegations in CCRB complaints against individual 48th Precinct officers including the following Complaints:

a.  #202407504 against Christopher Hendrickson, Derreck Cruz;

b.  #202407512 against Charnel Tabon;

c.  #202400588 against Yissel Martinez, Gloria Silverio, Eduardo Lantigua, Vanessa Solis;

d.  #202400410 against Justin Valentin;

e.  #202202531 against Hala Salem, Mylissa Graham;

f.  #202300959 against Angelo Hernandez, Miguel Penacabrera, Kristopher Recalde, Steven Martinez, Jonathan Mazza;

g.  #202311425 against Kascem Pennant,

---

[4] https://www.nypdmonitor.org/resources-reports/
[5] https://www.nypdmonitor.org/wp-content/uploads/2025/02/2025.02.03-Floyd-Dkt.-952-1-Monitors-23rd-Report.pdf

h.      Phong Le, Joseph Whelan, Dante Pulido;

i.      #202207119 against Joseph Whelan, Antonio Martinez, William Defossett;

j.      #202304168 against Phong Le, Dante Pulido;

k.      #202311425 against Kaseem Pennant, Dante Pulido, Phong Le, Joseph Whelan;

l.      #202302010 against Kaseem Pennant, Phong Le, Anthony Liriano;

m.      #202300395 against Kaseem Pennant, Joseph Whelan, Paul Lee, Antonio Martinez;

n.      #202203713 against Kaseem Pennant, Antonio Martinez, Ibn Bathelemy, Dominick Rodriguez;

o.      #202204155 against Kaseem Pennant, Antonio Martinez, Dominick Rodriguez, Taulant Gjonbalaj;

p.      #202205028 against Joseph Whelan, Nicole Krauss, Dharlyn Vasquez;

q.      #202311419 against Rubenson Marcellus;

r.      #202307067 against Jeffrey Galeano, Joseph Baerga, Crystal Palacios;

s.      #202105658 (September 2021 incident) substantiated abuse of authority threat of force, offensive language, physical force against Joseph Whelan, Danilo Mcleish, Oliva Carvajalhernandez with Defendant Whelan suffering a command B discipline with loss of 5 vacation days, Danilo McLeish resigning so no discipline. Oliva Carvalhernandez NYPD chose not to discipline;

t.      #202300959 (February 2023 incident) substantiated abuse of Authority refusal to provide name, shield number against Angelo Hernandez with a Command Discipline A, 1 vacation day. Substantiated abuse of authority refusal to process civilian complaint against Jonathan Mazza with no decision yet on penalty;

u.      #202206493 (September 2022 incident) substantiated charges include Abuse of authority stop, failure to provide RTKA card, vehicle search, threat of force, discourtesy against multiple officers of the 48 including Taisha Acevedo, Hiram Nieves, Ibn Barthelemy, Cristian Medrano, Ariel Torres, Esthefany Perezalmanzar, Travis Rivera. All disciplinary penalties pending;

v.      #202307000 (July 2023 incident) with substantiated charges of Abuse of Authority refusal to provide name against Herbierto Sifonte, and Gustavo Santana;

w.      #202300017 (December 2022 incident) with substantiated charges of Physical Force against Anthony Liriano, Charnel Tabo, Hamza Jaji, Dante Pulido, Andrew

Perz, Heriberto Sifonte, Mohammed Sahidullah with all penalties pending (also substantiated charges against same officers for bias policing).

110.    Plaintiff incorporates by reference the factual allegations in the following lawsuits against individual 48th Precinct officers including:

   a.    *Julissa Pena v. City of NY*, et al, 817178/2022E (NY Supreme, Bronx County);

   b.    *Jarrius Vereen, Garcia, et al*, 804743/2024E (NY Supreme, Bronx County);

   c.    *Infallible Davis v. City of NY*, et al, 812649/2023E (NY Supreme, Bronx County);

   d.    *W.C. infant by Png McGriff, Monique, v City of NY et al*, 815600/2022E (NY Supreme, Bronx County);

   e.    *Guillermo Antonio Ramos Ayala v. City of NY*, et al, 808028/2023E;

   f.    *Raphique Green v. City of New York*, et al, 804656/2024E(NY Supreme, Bronx County);

   g.    *Angel Rodriguez v. City of NY,* et al, 811814/2023E (NY Supreme, Bronx County).

## **FIRST CLAIM FOR RELIEF**

### **Unlawful Seizure / False Arrest**

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

111.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

112.    Defendants' seizure of the Plaintiffs herein was done without any judicial warrant authorizing them to seize Plaintiffs, was unreasonable, and was done without privilege or lawful justification.

113.    Plaintiffs did not consent and were conscious of their confinement by Defendants.

114.    Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiffs.

115.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

116.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

**Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution**

117.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

118.    Defendants used types and levels of force that were excessive and unnecessary force against the Plaintiffs.

119.    The use of force against the Plaintiffs were in contravention of, or inconsistent with, related, written NYPD policies and/or training.

120.    Defendants used force that they knew, or should have known, would negatively impact Plaintiffs, and/or cause lasting pain, suffering, and/or injury, without making individualized or otherwise appropriate determinations about whether these uses of force were necessary, justified, or reasonable under these circumstances.

121.    Defendants' use of force against Plaintiffs was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

122.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

123.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF
### Negligent Hiring

124.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

125.    The Defendant CITY OF NEW YORK, NYPD, their agents, servants and employees were negligent, careless and reckless in hiring, retaining, training, monitoring, retraining, supervising and promoting its employees including but not limited to each of the named individual defendants and the unnamed Doe and Roe defendants, in that said police officers, as employees of Defendant CITY OF NEW YORK, were not qualified to be hired or retained or promoted as police officers, lacked the experience, skill, training and ability to be employed, retained and utilized in the manner that each was employed by Defendant CITY OF NEW YORK and NYPD.

126.    That the Defendant CITY OF NEW YORK and NYPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that Defendant CITY OF NEW YORK and NYPD failed to adequately test, analyze test results, and/or investigate above mentioned police officers' backgrounds and performances.

127.    Defendant CITY OF NEW YORK and NYPD failed to exercise due care and caution in its hiring, retaining, training and/or promoting practices in that Defendant CITY OF NEW YORK and NYPD failed to adequately screen said police officers, failed to adequately monitor said police officers, and failed to adequately discipline said police officers when they violate Patrol Guidelines.

128.    Defendant CITY OF NEW YORK and NYPD were also negligent in that prior to and at the time of the acts complained of herein, due to the prior history of the police officer defendants named herein, knew or should have known of the bad disposition of said defendants, or at the very least had knowledge of facts that would put a reasonably prudent employer on inquiry concerning their bad disposition and the fact that defendant police officers were not suitable to be hired and employed by the Defendant CITY OF NEW YORK and NYPD and that due to their lack of training, these officers should have had adequate supervision so that they would not arrest innocent individuals nor use excessive force during the arrest process.

129.    That reason of the above, the Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

## FOURTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE

130.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

131.    The defendants that were present but did not either actively participate in the aforementioned unlawful and unconstitutional conduct or did not physically touch Plaintiffs while the other officers violated the Plaintiffs' constitutional rights had an affirmative duty to intervene on behalf of the Plaintiffs.

132.    The defendants that were present but did not either actively participate in the aforementioned unlawful and unconstitutional conduct or did not physically touch Plaintiffs while the other officers violated the Plaintiffs' constitutional rights had observed the improper conduct, and had an opportunity to prevent such conduct, but failed to and prevent such conduct and failed to intervene.

133.    As a result of the foregoing, Plaintiffs suffered permanent injury, their liberty was restricted for an extended period of time, they were put in fear for their safety, and they were humiliated and subject to other physical constraints.

134.    As a direct and proximate result of such acts, defendants deprived Plaintiffs of their rights under the laws of the State of New York.

135.    As a result of the aforementioned conduct of defendants, Plaintiffs sustained injuries, including but not limited to loss of liberty, emotional and psychological injuries.


**FIFTH CLAIM FOR RELIEF**
**Negligent and Intentional Infliction of Emotional Distress**

136.    Plaintiff APPLING  repeat, reiterate, and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if more fully set forth at length herein.

137.    By the actions described herein, the Appling defendants, each acting individually and in concert with each other, engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which negligently caused severe emotional distress to Plaintiff.

138.    The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated Plaintiff's statutory and common law rights as guaranteed Plaintiff by the laws and Constitution of the State of New York.

139.    As a direct and proximate result of such acts, the Appling defendants deprived Plaintiff Appling of his rights under the laws of the State of New York.

140.    The Appling defendants were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY OF NEW YORK and the New York City Police Department, which are therefore responsible for their conduct.

141.    The Defendant CITY OF NEW YORK, as the employer of the Appling officer defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

142.    As a result of the aforementioned conduct of defendants, Plaintiff sustained injuries, including but not limited to emotional and psychological injuries.

## SIXTH  CLAIM FOR RELIEF
### Negligent Hiring, Retention, Training and Supervision

143.    The Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if more fully set forth at length herein.

144.    The Defendant CITY OF NEW YORK and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train, and supervise defendants, individuals who were unfit for the performance of police duties on the aforementioned dates at the aforementioned locations.

145.    As a result of the aforementioned conduct of defendants, Plaintiffs sustained injuries, including but not limited to emotional and psychological injuries.

## SEVENTH CLAIM FOR RELIEF
### Violation of Article I, § 12 of the New York State Constitution

146.    The Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the foregoing paragraphs with the same force and effect as if more fully set forth at length herein.

147.    Such conduct breached the protections guaranteed to Plaintiffs by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 9, 11, and 12, and including the following rights:

> i. freedom from unreasonable search and seizure of their person and property;
> ii. freedom from arrest without probable cause;
> iii. freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiffs were aware and did not consent;
> iv. freedom from the lodging of false charges against them by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and
> v. freedom from deprivation of liberty without due process of law.

148.    As a direct and proximate result of defendants' deprivation of Plaintiffs' rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiffs suffered mental, economic, and emotional injuries, as well as a deprivation of liberty.

149.    As a result of the above tortious conduct, Plaintiffs were caused to suffer mental, economic, and emotional injuries, as well as a deprivation of liberty.

150.    As a result of the above unconstitutional conduct, the Defendant CITY OF NEW YORK is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

## EIGHTH CLAIM FOR RELIEF
### Individual Defendant Officer's Failure to Intervene
### in Violation of Plaintiff's AC 8-802 Rights

151.    Each Plaintiff repeats, reiterates, and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

152.    The acts of Defendant Officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

153.    The acts of Defendant Officers caused Plaintiffs to be deprived of their rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8 – 802, to wit: to be secure in their person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

154.    The Defendant Officers, while in uniform, unlawfully seized, frisked, and searched the Plaintiffs, before detaining plaintiffs and further causing their detention for approximately three (3) days in total be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

155.    The Defendants that did not physically touch Plaintiffs, but were present when other officers violated Plaintiffs AC 8-802 right against unreasonable search and seizure and excessive force had an affirmative duty to intervene on behalf of Plaintiffs, whose constitutional rights were being violated in their presence by other officers.

156.    Defendants failed to intervene to prevent the unlawful conduct described herein, thereby failed in their duty to intervene to protect Plaintiffs from violation of their rights.

157.    By reason of the acts and omissions by Defendants described above, Plaintiffs have endured physical and emotional injuries and were otherwise damaged and injured.

**NINTH CLAIM FOR RELIEF**
**City-Employer's Liability for Defendant Officer's**
**Violation of Plaintiff's AC 8-802 Rights**

158.    Each Plaintiff repeats, reiterates, and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

159.    Defendant Officers are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8 - 801 in that they are employees of the Police Department or persons appointed by the Police Commissioner as a Special Patrolman.

160.    The Defendant CITY OF NEW YORK, as the employer of the covered individual Defendant Officers, is liable to the Plaintiffs for the wrongdoing of the covered individual Defendant Officers.

161.    The acts of Defendant Officers constituted conduct under color of any law, ordinance, rule, regulation, custom or usage.

162.    The acts of Defendant Officers caused Plaintiffs to be deprived of their rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8 – 802, to wit: to be secure in their person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

163.    The Defendant Officers, while in uniform, unlawfully seized, frisked, and searched the Plaintiff's, before detaining plaintiffs and further causing their detention and deprivation of liberty.

164.    By reason of the acts and omissions by Defendants described above, Plaintiffs have endured physical and emotional injuries and were otherwise damaged and injured.

**TENTH CLAIM FOR RELIEF**
**City-Employer's Liability for Defendant Officer's  Failure to**
**Intervene in Violation of Plaintiff's AC 8-802 Rights**

165.    Each Plaintiff repeats, reiterates, and re-alleges the foregoing paragraphs as if the same were fully set forth at length herein.

166. Defendant Officers are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8 - 801 in that they are employees of the Police Department or persons appointed by the Police Commissioner as a Special Patrolman.

167. The Defendant CITY OF NEW YORK, as the employer of the covered individual Defendant Officers, is liable to the Plaintiff's for the wrongdoing of the covered individual Defendant Officers.

168. The acts of Defendant Officers constituted conduct under color of any law, ordinance, rule, regulation, custom or usage.

169. Defendant Officers had a duty to protect Plaintiff's from violations of their rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8 – 802, to wit: to be secure in their person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

170. The Defendants that did not physically touch Plaintiff's but were present when other officers violated Plaintiff's AC 8 – 802 rights against unreasonable search and seizure and excessive force had an affirmative duty to intervene on behalf of Plaintiff's, whose constitutional rights were being violated in their presence by other officers.

171. Defendants failed to intervene to prevent the unlawful conduct described herein, thereby failed in their duty to intervene to protect Plaintiff's from violation of their rights.

172. By reason of the acts and omissions by Defendants described above, Plaintiffs have endured physical and emotional injuries and were otherwise damaged and injured.

<u>**ELEVENTH CLAIM FOR RELIEF**</u>

**ILLEGAL STOP AND FRISK**

***Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

*for Defendants' Violations of Plaintiff's Rights Under the Fourth, and Fourteenth Amendments to the United States Constitution*

173.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

174.    That on the dates and locations listed above, the Defendant CITY OF NEW YORK and NYPD were present through its agents, servants and/or employees including but not limited to the individually named defendants and unnamed Doe and Roe defendants, who were acting in the course of their employment and under the color of law to wit: the statutes, ordinances and regulations, policies and customs usage of the State of New York and/or City of New York.

175.    The Plaintiffs were each lawfully in the locations identified above when they were stopped, questioned, searched and seized solely on the basis of their age and/or race and for no legal or legitimate reason.

176.    That said illegal stops and seizures were part of the Defendant CITY OF NEW YORK's   custom and practice and/or practice of racial profiling, and/or meeting arrest or summons quotas, and/or the illegal stop and search of civilians which was authorized by or met with the tacit approval of the Defendant CITY OF NEW YORK and NYPD under their "Stop, Question and Frisk" policy or program ("Stop and Frisk").

177.    That under the "Stop and Frisk" program, the Defendant CITY OF NEW YORK and NYPD permitted, condoned or acted with deliberate indifference to the racial disparity of its' application , to the fact that unnecessary or illegal frisk or searches were conducted, that very low percentages of seizures, frisks and searches resulted in arrests or the recovery of contraband, that pretextual reasons are provided for "Stop and Frisk", that officers do not always fill out Stop and Frisk reports, i.e. UF-250s, and are not disciplined when they fail to do so, that stop and

frisks are conducted without reasonable suspicion, and that the program of "Stop and Frisk" has
resulted in illegal stops, seizures, frisks, arrests and the use of physical force.

178.    That the Defendant CITY OF NEW YORK and NYPD have failed to discipline,
train, monitor or retrain offending police officers who engaged in stops and frisks without any
legal justification and has failed to discipline officers who fail to fill out required UF-250s.

179.    That the Defendant CITY OF NEW YORK and NYPD have failed to adequately
investigate and/or discipline officers who use excessive force, stop and frisk innocent citizens
who have not done anything illegal or acted in suspicious manner warranting a seizure, who
failed to report misconduct of fellow officers, who destroy evidence, who engage in fraud,
misrepresentations, deceit, and maliciously participate in and instigate prosecutions of innocent
citizens.

180.    It is alleged herein that Plaintiffs were stopped and seized absent reasonable
suspicion.  That said actions of defendants were pursuant to an illegal and improper Stop and
Frisk program that was promulgated by defendants.  That such custom, policy and program has
created a class of citizens, including Plaintiffs, who have been illegally stopped and seized,
searched and questioned based on their race, and in order to meet arrest quotas.  Evidence of said
policy is as follows:

a.   That in a class action lawsuit David Floyd, et. al. v. City of New York, et. al.,
     filed in Untied States District Court, Southern District of New York, 08 CIV
     1034, in a decision dated 5/16/12 certifying a class action lawsuit, it was found
     that between the years of 2005 and 2009 a reported 2.8 million people in New
     York City have been stopped and frisked. Of said number more than 87% were
     minority citizens. Summons and arrests were issued or made in approximately
     10% of the reported stops. Meaning that based on their own records, defendants'
     suspicions are incorrect approximately 9 out of 10 stops.

b.   The Honorable Shira A. Scheindlin, found in the Floyd decision that:

     i.     It is indisputable that NYPD has an enormous Stop and Frisk program;

    ii.   Evidence shows that the Stop and Frisk program is organized and hierarchical;

    iii.   Stop and Frisk program has been designed and revised at highest levels of defendants;

    iv.   The implementation of the program is conducted according to uniform and centralized rules;

    v.   Monitoring of the program is hierarchical;

    vi.   The program is the result of institutional decisions and directives.

  c.  Justice Sheindlin further found that a preponderance of evidence shows that defendants' policy of establishing performance standards and demanding increased levels of stop and frisks results in putative class of aggrieved citizens. The Court noted that street level stops have risen every year. That in 2004, defendants documented 313,000 stops, and in 2011 they reported 684,000 stops. In a Police Officer Performance Objectives Operation Order dated 10/17/11, Commissioner Kelly directed that "Department managers can and must set performance goals -relating to "the issuance of summons, the stopping and questioning of suspicious individuals and the arrests of criminals." It further states that "uniformed members who do not demonstrate activities . . . or who fail to engage in proactive activities . . . will be evaluated accordingly and their assignments reassessed."

181.  Additional support of the existence of an illegal and/or improper stop and frisk program custom or practice and/or excessive use of force and filing of false charges includes:

  a.  The various reports of the NYPD Floyd Monitor to the Court on Police Misconduct and Discipline, including but not restricted to the September 19, 2024, report that stated, "Discipline for illegal stops and frisks, even when substantiated by CCRB, is not pursued with same vigor and resolve as for other misconduct. Penalties for wrongdoing involving stops, questions, frisks, or searches of persons ("SQFS") even when repeated, are rare."

  b.  The NYCLU report dated March 22, 2024, titled, NYPD STOPS ARE SKYROCKETING UNDER MAYOR ADAMS, with an introductory statement, "The NYPD recorded more stops of New Yorkers in 2023 than it has in nearly a decade, and 89 percent of those who were stopped are Black and Latinx."

182. Individual incidents of stop and frisk are too numerous to mention, but include all of the incidents identified above, plus others within a few years of the experiences of the plaintiffs:

    a. On 8/12/19 in the vicinity of 894 Rogers Place, Bronx, NY, Edmanuel Benitez was standing outside of the building and waiting for a friend to come outside to play basketball. All of a sudden, he was approached for no reason by officers from the 41" Precinct and thereafter patted down, searched, arrested, strip searched and prosecuted for the sale of marihuana. All charges were dismissed.

    b. On 3/17/23 in the vicinity of Crotona Avenue and East 178th Street, Bronx, NY, Angel Rodriguez was lawfully present, when without cause, he was approached by members of the NYPD from the 48th precinct. These officers patted him down, searched him, grabbed, assaulted and detained him in an aggressive and excessive manner without legal justification or cause. Mr. Rodriguez was arrested, and all charges were eventually terminated in his favor.

    c. On 1/18/22, C.W., a minor was lawfully in the vicinity of 2356 Lorillard Place, Bronx, New York, when he was approached by members of the 48th Precinct, unlawfully arrested, battered and subject to excessive force. C.W. was detained, arrested and charged with criminal possession and assault charges were dismissed and sealed on May 17, 2022.

    d. On 1/11/22, Julissa Pena was lawfully in the vicinity of East 179th Street and Honeywell Avenue, Bronx, New York, when she was approached by members of the 48th Precinct who, without legal justification, cause or excuse, unlawfully interrogated, pointed a gun at, detained and used excessive force on Ms. Pena before arresting her. All charges were dismissed.

    e. On 8/2/22, Guillermo Antonio Ramos Ayala and Yunior Parra Mendez were lawfully within the vicinity of Crotona Avenue and East 180th Street, Bronx, New York taking a lunch break from work when members of the 48th Precinct unlawfully stopped, searched, detained, arrested and used excessive force upon them. On March 27, 2023, all charges were dismissed and sealed.

    f. On 3/21/21, Jarrius Vereen, was lawfully present in the vicinity of 599 East Tremont Avenue, Bronx, New York when members of the 48th Precinct, approached him without cause or reasonable suspicion, handcuffed him, pulled his pants down and threw him to the ground face first, causing severe injuries requiring surgery. Plaintiff was not cited for any violation of law or taken into police custody; instead, he was transported by ambulance to St. Barnabas Hospital, where surgery was performed.

183.    That reason of the above, the Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

184.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

185.    As is evidence from the above, Plaintiffs' injuries including the violation of their constitutional rights, the deprivation of their freedom, falsely and unconstitutionally being stopped and subject to physical and emotional injuries, are the direct and proximate result of the Defendant CITY OF NEW YORK'S and NYPD'S policies and/or deliberate indifference to practices which involve the excessive use of force, false arrests, police cover-ups, witness intimidation, malicious prosecution, illegal stop, questions and frisks, searches, Fourth Amendment violations, and deliberate indifference to the need to train, supervise, monitor, investigate and discipline, including suspension, dismissal and/or reassignment offending police officers. The practice is widespread and pervasive throughout the entire City of New York.

186.    The Defendant CITY OF NEW YORK and NYPD knew or should have known of the customs and police practices of its officers which included but was not limited to the failing to preserve and/or destruction of exculpatory evidence, threatening to arrest witnesses to police misconduct and engaging in coverups, fraud, perjury, deceit and malfeasance.

187.    That the acts of employees of the Defendant CITY OF NEW YORK and NYPD, i.e., police officers, who violate the civil and constitutional rights of the citizens of the City of New York routinely go unreported, undisciplined and their acts condoned by other officers, including their supervisors. Upon information and belief, the supervisors of defendant police

officers herein were aware of the conduct of defendant police officers and failed to stop, report or intervene in the misconduct.

188.    The Defendant CITY OF NEW YORK and NYPD'S tolerance for brutality, excessive force, illegal and/or retaliatory arrests, and their emphasis to come down hard on quality-of-life infractions leads to a systemic practice and policy wherein police officers seem fairly tolerant of police brutality, silence in the face of brutality and/or illegal stops, frisks, searches, seizures and/or arrests, and engage in the practice of meeting arrest quotas. A systemic practice where officers who report said misconduct are not viewed as "good cops" but rather as outcasts and are ostracized and often transferred to other assignments thereby perpetuating the illegal conduct of the NYPD and thusly the Defendant CITY OF NEW YORK.

189.    Some instances where officers were treated as outcasts for reporting misconduct and/or arrest/summons quota system are as follows:

    a.    The existence of arrest quotas, summons quotas and approval of illegal stops and arrests have been exposed by Police officer Adrian Schoolcraft in a separate lawsuit which was cited by Justice Sheindlin in Floyd.

    b.    Justice Sheindlin referenced the deposition of Police Officer Adhjly Polanco of the 41st Precinct stating that commanding officers set specific quotas for arrests and summons and for stop and frisks and threatened to reduce overtime for officers who failed to perform well and re-assign those who fail to meet quotas to less desirable posts.

    c.    According to secretly tape-recorded conversations made by Schoolcraft, a Lieutenant, a Deputy Inspector and Chief of transportation can be heard encouraging and demanding increased stops, summons and detentions and arrests.

    d.    Police Officer Craig Lance of the 42nd Precinct filed a lawsuit against the NYPD claiming the existence of a quota system and a systematic retaliation and harassment to those who did not comply.

    e.    Detective James Griffin filed a lawsuit claiming that in the NYPD there exists a

culture wherein officers who report corruption will face harassment and a hostile work environment and that this conduct was tolerated by supervisors within the NYPD.

    f.    Police Officer Minoia, an officer with an Ivy League degree, assigned to the 42nd Precinct, was reassigned to a "punishment post" due to the fact that he failed to write a sufficient amount of summons and stated, "I'm not going to pull out my summons book and write a summons because my boss is telling me he's going to make it difficult for me if I don't."

190.    In sum, the Defendant CITY OF NEW YORK and NYPD are responsible for creating a custom, policy or practice wherein many officers do not seem to believe that anything is really wrong with stopping and searching innocent citizens or using unnecessary or excessive force or falsely arresting citizens to meet an arrest quota.

191.    That the above customs, polices and/or practices and the deliberate indifference thereto, was a direct and proximate cause of the illegal seizure, detention and deprivation of liberty of the Plaintiffs, and the excessive use of force on the Plaintiffs. The defendant CITY OF NEW YORK and NYPD'S polices, customs and/or practices deprived the Plaintiffs of their rights and liberties as set forth in the Constitutions of the United States and the State of New York and under 42 U.S.C §§ 1983, 1986 and 1988.

192.    That said actions violated the Fourth and Fourteenth Amendments to the Constitution of the United States, violated Plaintiff's right to be secure in person, and that the defendants used excessive, unnecessary and unlawful force, which constituted cruel and inhumane treatment and denied them due process of law.

193.    Moreover, the defendant CITY OF NEW YORK and NYPD caused or created a policy and/or custom, and acted with deliberate indifference to patterns and/or police practices which included illegal seizures, unlawful detentions, unconstitutional deprivations of liberty, excessive or arbitrary use of force, illegal use of police equipment, destruction of evidence,

intimidation of witnesses, illegal arrests, failing to gather evidence when allegations of police misconduct are involved, condoning a code of silence within the NYPD regarding misconduct, failing to take police reports of illegal conduct, failing to properly supervise, train, investigate or discipline officers, failing to inform officers who have violated individuals' constitutional rights when such conduct has led to a pre-suit or filed suit settlement, and any and/or all of the above have contributed to Plaintiffs' illegal seizures, unlawful detentions, unconstitutional deprivations of liberty and injuries.

194.    That the Plaintiffs did not commit any illegal acts, either before or at the time they were illegally seized, unlawfully detained, unconstitutionally deprived of their liberty, assaulted, battered and deprived of their  constitutional rights as set forth in the Constitution of the United States and 42 U.S.C § 1983.

195.    That by reason of the foregoing, Plaintiffs have been damaged in an amount that exceeds the jurisdictional limits of all lower trial courts of this state.

196.    Additionally, as discussed elsewhere herein, Defendant CITY OF NEW YORK designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in the illegal seizures, unlawful detentions, and unconstitutional deprivations of liberty of the  Plaintiffs subjected Plaintiffs to the violations of their constitutional rights described elsewhere herein.

197.    All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to: (a) formal policies, rules, and procedures of Defendant CITY OF NEW YORK; (b) actions and decisions by Defendant CITY OF NEW YORK's policymaking officials; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute de facto policies accepted,

encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant CITY OF NEW

YORK, through its policymaking officials; (d) Defendant CITY OF NEW YORK's deliberate

indifference to Plaintiffs' rights secured by the Fourth, and Fourteenth Amendments of the

United States Constitution, as evidenced by the Defendant CITY OF NEW YORK's failures, and

the failures of the Defendant CITY OF NEW YORK's policymaking agents, to train, supervise,

and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described

herein.

198.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of

their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and

expenses; and/or otherwise damaged and injured Plaintiffs.

## THE NYPD'S POLICY AND/OR PRACTICE OF USING EXCESSIVE FORCE TO CONTROL INDIVIDUALS THEY STOP

199.    Defendants used types and levels of force that were excessive and unnecessary

force against the Plaintiffs.

200.    The use of force against the Plaintiffs were in contravention of, or inconsistent

with, related, written NYPD policies and/or training.

201.    Defendants used force that they knew, or should have known, would negatively

impact Plaintiffs, and/or cause lasting pain, suffering, and/or injury, without making

individualized or otherwise appropriate determinations about whether these uses of force were

necessary, justified, or reasonable under these circumstances.

202.    The unlawful conduct of the Defendants was willful, malicious, oppressive,

and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TWELTH  CLAIM FOR RELIEF
### Assault

203.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

204.    The Appling Defendants committed assault within the meaning of New York common law against Plaintiff Appling by intentionally placing Plaintiff  Appling in fear of imminent harmful or offensive contact.

## THIRTEENTH CLAIM FOR RELIEF
### Battery

205.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

The Appling Defendants committed battery within the meaning of New York common law against Plaintiff Appling by intentionally physically contacting Plaintiffs Appling without Plaintiffs' consent.

## FOURTEENTH CLAIM FOR RELIEF
### False Imprisonment and Unreasonable Detention

206.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

207.    By the actions described above, the police officials described above did falsely detain, unlawfully seize and unconstitutionally deprive Plaintiff Appling of liberty within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff Appling was conscious of the confinement, and it was without his consent.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs demand judgment against the individual Defendants and the

Defendant CITY OF NEW YORK as follows:

a.   Actual and punitive damages against the individual Defendants in an amount to be
     determined at trial;

b.   Actual damages in an amount to be determined at trial against the Defendant
     CITY OF NEW YORK;

c.   Injunctive and declaratory relief, including under the New York City
     Administrative Code;

d.   Statutory attorney's fees, expert fees, disbursements, and costs of the action
     pursuant to, *inter alia*, 42 U.S.C. §1988, New York State Law, the New York City
     administrative code, and New York common law; and

e.   Such other relief as the Court deems just and proper.


Dated:  New York, New York
        April 8, 2025



                        **WYLIE STECKLOW PLLC**



                        _____
                        Wylie M. Stecklow
                        Carnegie Hall Tower
                        152 W. 57th Street, 8th Floor
                        New York, NY 10019
                        (212) 566 8000
                        ECF@WylieLAW.com