UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JAYLEN APPLING AND J.M., a minor by their
Parent and Guardian, ELY TORRES.,

                                      Plaintiffs,

     -against-

THE CITY OF NEW YORK, et al.,

                                  Defendants.
-----------------------------------------------------------------X

**OPINION AND ORDER ON INFANT COMPROMISE**

**25-CV-2908 (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

The parties in this case reached a settlement of this action at a settlement conference before the undersigned. Insofar as one of the Plaintiffs, Plaintiff J.M., is a minor, now before the Court is Plaintiffs' motion for approval of an infant compromise. (ECF Nos. 20-22.) The parties have consented to the jurisdiction of the undersigned for purposes of this motion. (ECF No. 23.) For the reasons set forth below, the motion is granted, and the settlement is approved.

## BACKGROUND

In this civil rights action brought pursuant to 42 U.S.C. § 1983, Plaintiffs contend they were stopped by New York City police officers for no reason and subjected to excessive force by police. J.M. says he was stopped on three occasions: May 30, 2024, June 1, 2024, and July 4, 2024. On May 30, police stopped J.M. while he was walking with a friend along the street near his home, police approached and stopped him and rear-handcuffed him. J.M. says he was not engaging in any inappropriate activity, and no reason was provided for stopping him. His friend

1

yelled that J.M. was a minor while videotaping the incident. Police released J.M. upon realizing they were being videotaped.

On June 1, 2024, J.M. was walking on the same road with his mother when an unmarked police car drove past him, made a U-turn and returned, rolling down the window and instructing J.M. to stop and asked him questions. J.M.'s mother began to videotape the encounter. The police ultimately did not exit the car and drove away. J.M. felt fearful during the encounter.

On July 4, 2024, J.M. was walking on the same road and not engaging in any suspicious activity when a police car stopped near him. J.M., afraid of another encounter, ran away. Police chased and caught him, dragging him down from a fence he was attempting to climb, causing cuts on his hands and body. Police handcuffed J.M. and took him to the police precinct where they held him for several hours. J.M.'s mother went to the police station to retrieve her son but was not allowed into the station while police questioned J.M. – a minor. Eventually, police released J.M. with no charges. His mother, who was waiting outside for more than an hour, took J.M. to the emergency room, where doctors noted he was an assault victim who had multiple abrasions all over his body.

## LEGAL STANDARDS

**I. Procedural Requirements**

In this District, Local Rule 83.2(a)(1) requires that:

> [a]n action by or on behalf of an infant or incompetent must not be settled or compromised ... without leave of the court embodied in an order, judgment, or decree. The proceeding upon an application to settle or compromise such an action must conform, as much as possible, to the New York State statutes and rules, but the court, for cause shown, may dispense with any New York State requirement.

S.D.N.Y. Loc. R. 83.2(a)(1).

New York Civil Practice Law & Rules ("CPLR") 1208 sets specific procedures for approving settlements and compromises of an infant's claim. The party must include an affidavit of the infant's representative that states (1) the representative's identity, residence, and relationship to the infant; (2) the name, age, and residence of the infant; (3) the circumstances that gave rise to the claim; (4) the nature and extent of the infant's injuries or damages; (5) the terms of the settlement; (6) the facts surrounding the settlement; (7) whether other reimbursement has been received; and (8) whether the infant's representative or family members have also made claims, and if so, more information about those claims. *See* CPLR 1208(a). The party must also include an affidavit of the infant's attorney, which must state: (1) the reason the attorney recommends the settlement; (2) that she is acting in the interests of the infant; and (3) what services she has rendered. *See* CPLR 1208(b). Counsel must include medical and hospital reports in settlements of personal injury claims. *See* CPLR 1208(c).

CPLR 1208(d) requires that the moving party, the infant, and his attorney appear "before the court unless attendance is excused for good cause." The infant's appearance is "the long-time practice of the court[s]." *Bittner v. Motor Vehicle Acc. Indemnification Corp.*, 257 N.Y.S.2d 521, 523 (Sup. Ct. 1965). "The appearance of the infant serves at least two purposes. First, an appearance may permit the Court to determine the extent of any injuries suffered. Second, appearance by the infants permits the Court to determine their position with respect to the settlement, which is a relevant consideration even given their minority." *Southerland v. City of New York*, No. 99-CV-3329 (CPS), 2006 WL 2224432, at *3 (E.D.N.Y. Aug. 2, 2006) (citations omitted).

New York State courts have established the "good cause" standard for excusing the infant's appearance, under which the Court will "consider whether the infant's appearance is necessary for a proper determination of settlement, and whether it would constitute a particular or unnecessary hardship if attendance is required." *Linda J. v. Wharton*, 594 N.Y.S.2d 971, 972 (Queens Cnty. Civ. Ct. 1992).  *Bermudez* set out six factors for examining the good cause standard: 1. the nature and extent of the injuries, 2. the permanency of the injuries, 3. the degree of recovery attested to by a physician, 4. the age of the infant, 5. the amount of the settlement in relation to the injuries sustained, and 6. the nature of the hardship involved in having the infant appear in court. *Bermudez v. Spagnoletti*, 803 N.Y.S.2d 17 (Kings Cnty. Civ. Ct. 2005).  Federal courts also look to these six factors in assessing whether to forgo a hearing for "good cause." *See Allen v. Robert's Am. Gourmet Food, Inc.*, No. 07-CV-2661 (NGG) (ETB), 2009 WL 2951980, at *9 (E.D.N.Y. Sept. 8, 2009) (citing *Wharton* and *Bermudez*); *Estate of Doe v. New York City Dep't of Soc. Servs.*, No. 93 Civ. 8385 (JFK) (MHD), 1995 WL 619864, at *2 n.2 (S.D.N.Y. Oct. 23, 1995) (stating that no formal hearing was required and distinguishing the conclusion in *Wharton* that a hearing was necessary).

**II. Substantive Requirements**

In determining whether an infant compromise should be approved, "the Court's role is to exercise the most jealous care that no injustice be done to the infant." *Southerland v. City of New York*, No. CV-99-3329 (CPS), 2006 WL 2224432, at *2 (E.D.N.Y. Aug. 2, 2006) (internal quotation marks omitted).  "Consistent with the applicable New York State statutes and rules, the analysis in this jurisdiction centers on whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed

4

settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." *Orlander v. McKnight*, No. 12-CV-4745 (HBP), 2013 WL 4400537, at *3 (S.D.N.Y. Aug. 15, 2013) (internal quotation marks omitted) (citing N.Y. Jud. L. § 474, CPLR 1205-08); *see also Edionwe v. Hussain,* 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (holding that the required analysis is whether settlement is "fair and reasonable and in the infant plaintiff's best interests"). "There is no bright-line test for concluding that a particular settlement is fair." *Sch. for Lang. & Commc'n Dev. v. N.Y. State Dep't of Educ.*, No. 02-CV-0269 (JS) (JO), 2010 WL 1740416, at *2 (E.D.N.Y. Apr. 7, 2010), *adopted by* 2010 WL 1752183 (E.D.N.Y. Apr. 28, 2010). The Second Circuit has stated that "Rule 83.2 is hardly a rigid obligation imposed on district courts." *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 655 (2d Cir. 1999). Thus, "[d]istrict courts have broad discretion when conducting an infant compromise hearing." *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 89 (2d Cir. 2010).

Courts in this District approve proposed infant compromises only when those agreements are "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." *Neilson*, 199 F.3d at 654 (internal quotation marks omitted). In making this determination, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (internal quotation marks omitted). These other factors include, *inter alia*: the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the

ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Allstate Ins. Co. v. Williams*, No. 04-CV-4575 (CLP), 2006 WL 2711538, at *2 (E.D.N.Y. Sept. 21, 2006).

A settlement is presumptively fair and reasonable if "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *T.H. v. New York City Dep't of Educ.*, 99 F. Supp. 3d 394, 395-97 (S.D.N.Y. 2015) (internal quotation marks omitted).  Also, it is well-settled that a compromise negotiated by an infant's natural guardian is presumptively fair and in the best interests of the child. *See, e.g.*, *Sch. for Lang. & Commc'n Dev.*, 2010 WL 1740416, at *3.

### III. Attorneys' Fees

"When approving an infant's compromise, the court [also] has an obligation to approve the reasonableness of attorney's fees." *Sanchez v. MTV Networks,* No. 10-CV-7854 (TPG), 2012 WL 2094047, at *2 (S.D.N.Y. June 11, 2012); *see also Orlander*, 2013 WL 4400537, at *6. The inquiry should focus on whether there was "suitable compensation for the attorney for his service ... [on] behalf of the ... infant." *Baez v. City of New York*, No. 09-CV-2635 (RRM) (JO), 2010 WL 1992537, at *3 (E.D.N.Y. Apr. 21, 2010) (internal quotation marks omitted). The agreement to a proposed attorney fee by the guardian of an infant plaintiff is not sufficient to approve the fee, because "the fee must be fixed by the court and any agreement of the guardian is advisory only." *Werner v. Levine*, 276 N.Y.S.2d 269, 271 (Nassau Cnty. Sup. Ct. 1967);

6

*see also Baez*, 2010 WL 1992537, at *3 (agreements on fees "serve only to guide the court in making a determination committed to its sound discretion").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008) (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The hourly rates should be "what a reasonable, paying client would be willing to pay," *Arbor Hill Concerned Citizens*, 522 F.3d at 184, and should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill Concerned Citizens*, 522 F.3d at 184.

"[T]he fee applicant has the burden of showing by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2005) (internal quotation marks

7

omitted) (quoting *Blum*, 465 U.S. at 896 n.11). That evidence must include billing records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested." *Martegani*, 687 F. Supp. 2d at 378 (internal quotation marks omitted).

## DISCUSSION

To start, the Court finds that all procedural requirements have been met. Plaintiff's mother submitted a sworn declaration setting forth her relationship to J.M. and the circumstances giving rise to the claim. She explains that she filed a CCRB complaint for each incident and retained counsel to protect and vindicate her son's rights. J.M.'s mother worked closely with counsel to file a notice of claim and ultimately the complaint in this action and attended the settlement conference with J.M., resulting in the instant settlement pursuant to which Defendants are paying a total sum of $92,500, with one-third of that amount ($30,833) going to attorneys' fees—an amount recommended by the mediator after extensive, arms-length negotiations between the parties. J.M.'s mother intends to hold the proceeds of the settlement in a trust account for the health, education, maintenance and support of J.M. Plaintiffs' counsel also submitted a declaration setting forth the work he performed on the matter and the basis for his recommendation of the settlement amount. Insofar as the undersigned facilitated the settlement of this action, met with the parties, and was able to assess the extent of injuries suffered and the parties' respective settlement position, there good cause for finding that the purpose of a hearing has been satisfied, and no hearing is needed prior to approval of the settlement.

The Infant Plaintiff's parent is a proponent of the settlement, and there is no indication to rebut the presumption that a settlement negotiated by the infant's natural guardian is fair and in the best interest of the child. *See e.g., Sch. for Lang. & Commc'n Dev.*, 2010 WL 1740416, at *3. To the contrary, the settlement here bears indicia of being fair and reasonable: it is the product of arms'-length negotiation by experienced counsel. Thus, I conclude that the terms of the settlement are fair, reasonable, and adequate based on a comparison of the terms of the compromise and the likely rewards of litigation.

As to attorneys' fees, Plain Contingency awards of one-third of the plaintiff's recovery are common in similar cases in this jurisdiction. *See Orlander*, 2013 WL 4400537, at *8. Plaintiffs have satisfied their burden of showing that the requested fees are reasonable.

## CONCLUSION

For the above reasons, the settlement is approved.

**SO ORDERED.**

Dated: October 14, 2025
New York, New York

_Katharine H Parker_
KATHARINE H. PARKER
United States Magistrate Judge

9